IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TONYA N. WALLIS                                                                                          PLAINTIFF

v.                                          CIVIL NO.        10-2068

MISHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                                        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her application for supplemental security income (SSI) payments under Title XVI of the Social Security Act (Act), 42 U.S.C. § 1382c(a)(3). *See* 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff protectively filed her SSI application on January 27, 2006, alleging disability since June 20, 2005, due to right leg problems (Tr. 39, 169). At the hearing, she also alleged problems with both knees, a tail bone problem, neck problem, depression, and anxiety (Tr. 38, 212). Because SSI benefits are not payable prior to the date of the application, the relevant period under consideration begins with Plaintiff's protective application date of January 27, 2006 (Tr. 151-153). See 20 C.F.R. § 416.335. The State Disability Determination Services denied her application at the initial and reconsideration levels (Tr. 62-68, 72-74).  Plaintiff requested an administrative hearing, and on March 24, 2008, Plaintiff, represented by an attorney, and a vocational expert testified before an ALJ (Tr. 34-61, 75).  By decision dated June 20, 2008 the

ALJ found that the Plaintiff was not entitled to disability. On April 8, 2010, the Appeals Council denied the review of the ALJ's findings. Thus, the decision of the ALJ represents the Commissioner's final decision for the purpose of further appeals. 20 CFR §§ 404.981 and 416.1481.

II.     **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id*. As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.   Applicable Facts**

Plaintiff was 32 years old at the time she filed her SSI application, had a ninth grade education, and had no past relevant work (Tr. 38-39, 59).

On March 27, 2006, Plaintiff underwent a consultative physical examination with Wojciech L. Dulowski, M.D. (Tr. 230-236). Plaintiff reported that she had been in a car accident in 1990 in which she injured her tailbone and fractured her right knee (Tr. 230). She underwent surgery for the fracture to the right knee (Tr. 230). Plaintiff complained of continued instability of the right knee, as well as some swelling and pain to her left knee (Tr. 230). On examination,

Dr. Dulowski reported that Plaintiff had difficulty walking on her heels and toes, and that she walked with a slight limp to the right side, but she did exhibit good stability (Tr. 231). Furthermore, Dr. Dulowski reported that Plaintiff exhibited good coordination; good strength in her upper and lower extremities; normal motor function; full hand grip strength; and good gross and fine manipulation (Tr. 231). Further, although her sacral bone was slightly tender, Plaintiff's alignment of her spine was normal and she possessed full range of motion to the spine (Tr. 231-232). She had full range of motion to her upper extremities and lower extremities, except for some limited range of motion to her right knee (130 out of 150 degrees) (Tr. 231-232). She had no muscle atrophy (Tr. 231). Dr. Dulowski's assessment was pain and instability of the right knee joint; status post open reduction, internal fixation of fracture of distal femur; chronic sacral pain; and painful left knee joint, probably from overuse (Tr. 231).

On April 6, 2006 Dr. K. Rowlands, M.D. completed a Physical Residual Functional Capacity Assessment. (T. 237-244). Dr. Rowlands determined that the Plaintiff could lift 20 occasionally, 10 pounds frequently, stand/walk for about 6 hours in an 8 hour day and sit for 6 hours in an 8 hour work day. He also determined that the Plaintiff had no restrictions on her ability to push and/or pull. (T. 238). Dr. Rowlands findings were reviewed by Dr. McClure on December 21, 2006 and affirmed as written. (T. 253).

Plaintiff sought treatment at the Northeastern Oklahoma Community Health Centers, Inc., on a handful of occasions in 2007 for a variety of complaints, including bilateral knee and right leg pain, for which she was prescribed medication (Tr. 263-266, 270-271, duplicates 272-275). X-rays of her right knee in January 2007 showed old healed fractures of the femur and that the knee joint space was preserved (Tr. 266, duplicate 275). X-rays of her left knee in January

2007 showed mild osteoarthritis of the medial compartment (Tr. 266, duplicate 275). When she returned to the clinic in December 2007, she also complained that she had anxiety for the past year, and the physician prescribed Buspar for anxiety (Tr. 270).

Plaintiff received treatment from Christopher Deloache, D.O., on September 13, 2007, complaining of right thigh pain and left knee pain with instability (Tr. 261). The Plaintiff reported to Dr. Deloache the severe automobile accident she was in 18 years ago, but she also reported a four wheeler accident "a couple of years ago".  On examination of her right extremity, Dr. Deloache noted that there was evidence of a healed fracture of her right thigh; tenderness at the midportion of the thigh anteriority; and a healed femoral shaft fracture (Tr. 261). She exhibited significant crepitance and deformity at the distal thigh into the knee (Tr. 261). She also exhibited crepitance at the right knee with hyperextension (Tr. 261). However, she was able to bear full weight (Tr. 261). Dr. Deloache noted that x-rays showed that her fractures to her femur were well healed (Tr. 262). With respect to her left extremity, Dr. Deloache noted that Plaintiff had a "markedly unstable" left knee with trace effusion and some soft tissue swelling; however, she was able to bear full weight (Tr. 261).

Plaintiff also visited the emergency room of the Stillwell Memorial Hospital in October 2007 and again in March 2008 complaining of knee and leg pain, for which the physician prescribed medication (Tr. 277-278).

The Plaintiff testified that she dropped out of high school after getting pregnant (Tr. 39). Although she was a cook at various points over the years and a laborer at a farm, her earnings record reflects minimal to no earnings  (Tr. 154-159, 170, 176).

Plaintiff testified that she fractured her femur in her right leg in 1990, and that she cannot

put any weight on her right leg (Tr. 40-41, 55). She testified that she has been using crutches for three or four months, which she said were advised by an emergency room physician (Tr. 41, 47). She said the emergency room physician advised her to see her primary care physician, but she said she could not afford to do so (Tr. 42). She testified that her left leg hurts more now because she has to use it more (Tr. 44). She testified that she also has problems with her left knee, right hip, tailbone, and neck (Tr. 44, 49-51). Plaintiff testified that she could sit no more than 30 minutes and stand no longer than 15 to 20 minutes (Tr. 54-55). She cannot walk more than 60 feet before having to stop and rest (Tr. 56-57). She was taking Hydrocodone and Ibuprofen at the time of the hearing and said she could no longer afford to take the Buspar for her anxiety (Tr. 58).

**IV.    Discussion**:

The ALJ found that Plaintiff had severe impairments of status post open reduction and internal fixation of the right knee (surgery to repair a fracture to her right knee)[1], sacral spine pain, and left knee pain, and non-severe impairments of neck and back pain, anxiety, and depression (Tr. 15, Finding 2). The ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1, for presumptive disability (Tr. 15, Finding 3).

The ALJ found that Plaintiff's allegations regarding her limitations were not fully credible, and that Plaintiff had the residual functional capacity for a full range of sedentary work

---

[1] An open reduction internal fixation (ORIF) refers to a surgical procedure to fix a severe bone fracture, or break. "Open reduction" means surgery is needed to realign the bone fracture into the normal position. "Internal fixation" refers to the steel rods, screws, or plates used to keep the bone fracture stable in order to heal the right way and to help prevent infection.

with the ability to lift and carry 10 pounds frequently and up to 10 pounds occasionally; stand and walk at least 2 hours during an 8-hour workday with normal breaks; and sit at least 6 hours of an 8-hour workday with normal breaks (Tr. 16, Finding 4; 17). The ALJ found that Plaintiff had no past relevant work (Tr. 20, Finding 5).

Of particular concern to the undersigned is the ALJ's RFC determination. Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press her case. *Snead v. Barnhart,* 360 F.3d 834, 836-37 (8th Cir.2004). That duty includes seeking clarification from treating physicians if a crucial issue is undeveloped or underdeveloped. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). The ALJ is also required to re-contact medical sources and may order consultative evaluations when the available evidence does not provide an adequate basis for determining the merits of the disability claim. *See* 20 C.F.R. §§ 416.912(e), 416.919a(b). The ALJ's duty to develop the record extends even to cases like plaintiff's, where an attorney represented the claimant at the administrative hearing. *Id*. It is incumbent upon the ALJ to establish by medical evidence that the claimant has the requisite RFC and to question a claimant in detail about her abilities.

The ALJ determined that plaintiff retained the RFC to perform sedentary work. He specifically found that the Plaintiff could lift and/or carry 10 pounds frequently and up to 10 pounds occasionally, stand and/or walk at least 2 hours out of an eight hour workday (with normal breaks), and sit for at least 6 hours out of an 8 hour workday (with normal breaks)." T. 16.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes

medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

"The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary to carry out job duties. Walking and standing are required occasionally. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight hour workday. Sitting would generally total about six hours in an eight hour workday. Unskilled, sedentary work also involves other activities classified as "non-exertional" such as capacities for seeing, manipulation, and understanding,   remembering and carrying out simple instructions."

As set forth in Social Security Ruling 96-9p, to perform the full range of sedentary work, a claimant must be able to walk and stand for a total of  "no more than two hours of an eight hour workday." This Ruling goes on to state that an individual who cannot stand and walk for two

hours a day cannot perform the full range of work. SSR-96-9p further notes that the "occupational base for an individual who must use [an assistive] device for balance because of significant involvement of both lower extremities (e.g. because of a neurological impairment) maybe significantly eroded."

The factual issue concerns the Plaintiff's ability to stand and/or walk at least 2 hours out of an eight hour workday (with normal breaks), and sit for at least 6 hours out of an 8 hour workday (with normal breaks).

The only Physical Residual Function Capacity Assessment was by Dr. K. Rowlands, M.D. a non treating consultive physician which was completed on April 6, 2006. (T. 237-244). *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence).

Of particular concern to the undersigned was the fact that the ALJ did not address the effect of the ACL tear on the ability of the Plaintiff to perform sedentary work.  The Plaintiff was seen by Dr. Dulowski on March 27, 2006. Dr. Dulowski noted that the Plaintiff "definitely has anterior and posterior Drawer's sign" (T. 231).  Drawer sign is an indication of laxity or a tear in the anterior or posterior cruciate ligaments of the knee in which there is a forward or backward sliding of the tibia.  Dr. Dulowski diagnosed the Plaintiff with Pain and Instability of the Right Knee. (Id.).  When the Plaintiff was seen by Dr. Deloache on September 13, 2007 he noted that her left knee was "markedly" unstable with ACL stressing with trace effusion and some soft tissue swelling." (T. 261).  Although Dr. Deloache noted that the Plaintiff was "bearing full weight" it is unclear how that notation would impact on her ability to do sedentary work in light

of his observation that the knee was "markedly" unstable.

The Plaintiff had testified that Dr. Deloache was her treating physician (T. 42) but she did not have the funds to continue to see him. The ALJ's duty includes seeking clarification from treating physicians if a crucial issue is undeveloped or underdeveloped. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

On October 22, 2007, Plaintiff visited the emergency room of the Stillwell Memorial Hospital complaining of right leg pain and the nurse noted she was using crutches (Tr. 278). The physician prescribed only medications (Tr. 278). On March 27, 2008, she visited the emergency room with complaints of left and right knee pain and the nurse again noted that Plaintiff was using crutches (Tr. 277). The physician assessed severe degenerative joint disease to the left knee and old fracture to her right femur (Tr. 277)

On December 20, 2007 the Plaintiff presented to the Northeastern Oklahoma Community Health Center, Inc. T. 269-270. She was diagnosed with Anxiety-depression. Leg pain, DJD, back pain. A notation was made that they "need to send to OSU-ortho" (T. 270) but the Plaintiff testified that she did not have the funds to pursue this course of treatment. (T. 42).

While it is for the ALJ in the first instance to determine a plaintiff's motivation for failing to follow a prescribed course of treatment, or to seek medical attention, such failure may be excused by a claimant's lack of funds. *Tome v. Schweiker*, 724 F.2d 711, 714 (8th Cir. 1984); *Jackson v. Bowen*, 866 F. 2d 274, 275 (8th Cir. 1989). "Although it is permissible in assessing the severity of pain for an ALJ to consider a claimant's medical treatment and medications, the ALJ must consider a claimant's allegation that he has not sought medical treatment or used medications because of a lack of finances." *Dover v. Bowen*, 784 F.2d 335, 337 (8th Cir. 1986)

(citing *Tome v. Schweiker*, 724 F.2d at 714).  Economic justifications for lack of treatment can be relevant to a disability determination.  *Murphy v. Sullivan*, 953 F.2d 383, 386 (8th Cir. 1992).

       The court believes remand is necessary to allow the ALJ to develop the record further regarding plaintiff's RFC.  See 20 C.F.R. §404.944; *Brissette v. Heckler*, 730 F.2d 548 (8th Cir. 1984) (holding that the ALJ is under the affirmative duty to fully and fairly develop the record).

**V.**    **Conclusion:**

       Accordingly, the court concludes that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the plaintiff, should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

       Dated this June 9, 2011.


                                            */s/ J. Marschewski*
                              HONORABLE JAMES R. MARSCHEWSKI
                              CHIEF UNITED STATES MAGISTRATE JUDGE